Filed 4/25/25  P. v. Lazocasanave CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | G062945 |
|       v. | (Super. Ct. No. 22HF0477) |
| ELIANA MERCEDES LAZOCASANAVE, | O P I N I O N |
|     Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Larry Yellin, Judge. Affirmed.

Garrick Byers, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene Sevidal and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

\*　　　\*　　　\*

## INTRODUCTION

A jury convicted Eliana Mercedes Lazocasanave (Defendant) of one count of second degree robbery (Pen. Code, §§ 211, 212.5, subd. (a)) and found to be true an enhancement allegation that Defendant personally used a deadly weapon (*id*., § 12022, subd. (b)(1)). The trial court sentenced Defendant to a prison term of two years, which was entirely offset by credit for actual days served and conduct credit.

An element of the crime of robbery is the taking of another person's property is accomplished by "force or fear." (Pen. Code, § 211.) Fear is defined as subjective; that is, the robbery victim "'was in fact afraid.'" (*People v. Collins* (2021) 65 Cal.App.5th 333, 341 (*Collins*).) Defendant argues the trial court erred by not instructing the jury, sua sponte, that an act is accomplished by fear if the other person is actually afraid.

The trial court here instructed the jury on the elements of robbery with CALCRIM No. 1600 but without a revision, added in 2022, to clarify that fear means actual fear. CALCRIM No. 1600 as given by the trial court was not erroneous and did not omit an element or withdraw an element from the jury's consideration. Defense counsel did not present the most current version of CALCRIM No. 1600 to the trial court, and did not object to or request a modification of CALCRIM No. 1600. Further, the trial court had no sua sponte duty to modify or clarify the instruction as given. We therefore affirm.

## FACTS

Defendant walked into a T-Mobile store in Mission Viejo on March 20, 2022 at 12:50 in the afternoon. The store manager, Joseph Moreno, approached and signed her into the T-Mobile system using her name and telephone number. Moreno then resumed helping another customer.

2

The next time Moreno saw Defendant, she was yanking a set of headphones off of a wall. The headphones had been locked onto a peg. Because only employees could unlock that item and remove it for a customer, seeing Defendant yank it off sent "a red flag" to Moreno. He also could see that Defendant had also taken a cell phone case.

Moreno approached Defendant and let her know she needed to pay for the headphones. Defendant said, with a calm demeanor, "I'll kill you." Moreno was not in fear and even chuckled because Defendant did not look like someone who do such a thing. Moreno said, "you're probably in a rush . . . those still need to be paid for" and "[w]e'll help you out as soon as we can." Defendant replied: "[n]o, really. I'll kill you." She then pulled a knife out from her jacket and released the retractable blade. The knife was a box cutter or razor type knife with a blade about two inches long.

Moreno stepped back. Defendant stepped forward. She did not wave the knife or thrust it toward Moreno. He pointed to the door and told Defendant she needed to leave. Defendant left the store with the cell phone case and the knife. Moreno watched her leave and walk across the store parking lot. He locked the door "to keep everyone in the store safe" and then called the police.

Moreno thought the entire interaction with Defendant was "very odd" and "none of it made sense" to him. As store manager, he had witnessed fewer than five thefts at the T-Mobile store. Defendant stood out from Moreno's past experience with thefts because of her "calm demeanor" and because criminals usually "have a sense of urgency. . . . they just pull the product and run."

When asked if he was scared or feared for his safety, Moreno replied, "you never know what somebody can do." When asked again whether

3

he was in fear, Moreno answered, "no" because "[s]he didn't look like the type." He backed away from Defendant to get out of arm's reach of the knife because it "doesn't make sense to be in arm's reach of a sharp knife." Moreno would have allowed Defendant to leave the store without paying for the cell phone case and headphones even if she did not have a knife because "it's not my job to catch bad people." Moreno testified: "We don't chase, we don't stop. That's not our policy. They want to take items, they take items. We make a report, call the cops, but we don't intervene."

Store surveillance video cameras captured much of the interaction between Defendant and Moreno. Two video recordings were received into evidence respectively as exhibits 11 and 12 and played for the jury, with Moreno testifying to provide narration. Exhibit 11, which is about two minutes long, shows the store's entrance from the interior. At about three seconds, Defendant is seen entering the store. Nothing else of note is seen until, at about one minute 53 second, Moreno is seen at the bottom of screen and Defendant, to his right, is seen leaving the store.

Exhibit 12 shows a different view of the store interior. At five seconds, the store entrance door opens. A store employee (not Moreno) is seen sitting at a desk across from two customers. At one minute 25 seconds, Moreno appears. He testified that he was "interact[ing] with [Defendant] to let her know that we would help her out as soon as possible." Defendant was holding the earphones and cell phone case that she eventually took from the store. At one minute 34 seconds, the recording shows Moreno taking a step back. Asked why, Moreno testified, "[s]he probably pulled out the knife at that point." At one minute 43 seconds Moreno takes several steps back because, he testified, "[s]he had a knife in her hand." Defendant followed Moreno as he stepped back. At one minute 52 seconds, Moreno appears to be

4

talking. He testified he was telling Defendant that she could leave. When asked how he felt, Moreno testified "[l]ike I wanted her to exit the store" in order "[t]o keep everybody safe" from "the knife." After following Moreno, Defendant abruptly turns to her right and is then seen leaving the store.

## DISCUSSION

### I.

### BACKGROUND: CALCRIM NO. 1600

CALCRIM No. 1600 is the standard instruction on the elements of robbery. CALCRIM jury instructions "'are the official instructions for use in the state of California.'" (*People v. Ramirez* (2021) 10 Cal.5th 983, 1008, fn. 5.; see Cal. Rules of Court, rule 2.1050.)

Effective March 11, 2022, CALCRIM No. 1600 was revised to add the following: "An act is accomplished by *fear* if the other person is actually afraid. The other person's actual fear may be inferred from the circumstances."[1] These two sentences are not surrounded by brackets, which are used by CALCRIM to indicate optional material. (Judicial Council of California Criminal Jury Instructions (LexisNexis Matthew Bender 2024) Alternatives vs. Options, p. xxii.)

Lazocasanave's trial was conducted in July 2023, 16 months after the effective date of the revisions to CALCRIM No. 1600. The trial court was apparently presented by counsel with, and instructed the jury with CALCRIM No. 1600 without the 2022 revision on actual fear.

---

[1] We grant Lazocasanave's unopposed request to take judicial notice of "Judicial Council of California, Invitation to Comment, CALCRIM-2021-02," pages 1 and 207 to 213 pursuant to Evidence Code section 452(c). Pages 207 through 213 are a redline version of CALCRIM No. 1600, bench notes, and comments, showing the revisions regarding fear. Page one gives the effective date of the revisions as March 11, 2022.

## II.

### WE ADDRESS DEFENDANT'S CLAIM OF
### INSTRUCTIONAL ERROR ON THE MERITS

Defendant's counsel did not object to the version of CALCRIM No. 1600 given at trial and never requested modification, clarification, or amplification of it. The Attorney General argues Defendant thereby forfeited any claim of instructional error because CALCRIM No. 1600 correctly stated the law.

A defendant may raise for the first time on appeal a claim that a jury instruction erroneously states the law if the error affects the defendant's substantial rights. (*People v. Buenrostro* (2018) 6 Cal.5th 367, 428.) A defendant may not claim on appeal that a jury instruction which correctly states the law is incomplete, misleading, or too general unless the defendant had requested clarification or amplification of the instruction in the trial court. (*Ibid.*; *People v. Nguyen* (2015) 61 Cal.4th 1015, 1051.) Failure to request a clarification results in forfeiture of any challenge to the instruction. (*People v. Simon* (2016) 1 Cal.5th 98, 143.)

What otherwise seems to be a clear forfeiture rule is qualified by the exception that "an appellate court may review any instruction, even when there was no objection or request for modification below, 'if the substantial rights of the defendant were affected thereby.'" (*People v. Johnson* (2016) 62 Cal.4th 600, 638, quoting Pen. Code, § 1259.) A defendant's substantial rights would be affected if the defendant's challenge to the jury instructions prevailed. (*Ibid.*)

To the extent Defendant contends CALCRIM No. 1600 did not correctly state the law, she did not need to object to preserve her claim of instructional error for appeal. To the extent Defendant contends CALCRIM

6

No. 1600 as given was incomplete, misleading, too general, or required modification, we address her claim of instructional error because, if Defendant were to prevail on her instructional challenge, her substantial rights might be affected. Thus, notwithstanding her counsel's failure to object to or request modification of CALCRIM No. 1600, we address Defendant's claim of instructional error on the merits.

III.

THE TRIAL COURT HAD NO SUA SPONTE DUTY<br>TO INSTRUCT ON ACTUAL FEAR

We apply the de novo standard of review to determine whether the version of CALCRIM No. 1600 given here correctly stated the law and whether that instruction removed an issue from the jury's consideration. (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

Penal Code section 211 defines the crime of robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Fear must be sufficient to facilitate the defendant's taking the property from the victim. (*People v. Mullins* (2018) 19 Cal.App.5th 594, 604.) This fear may be instilled by express threats, the display of a weapon, or intimidation alone. (*People v. Morehead* (2011) 191 Cal.App.4th 765, 775 (*Morehead*); *Mullins* at p. 604.) For the crime of robbery, fear means "the victim was in fact afraid" and that the robbery was accomplished by such fear. (*Collins, supra*, 65 Cal.App.5th at p. 341; *People v. Montalvo* (2019) 36 Cal.App.5th 597, 612.)

7

CALCRIM No. 1600 as given in this case was not legally erroneous and correctly recited the elements of robbery.[2] By failing to instruct on actual fear, CALCRIM No. 1600 was incomplete or ambiguous. (*Collins, supra*, 65 Cal.App.5th at p. 341 ["the prosecutor effectively exploited the ambiguity in the CALCRIM No. 1600 instruction as to whether the 'fear' must be subjective or objective"].)

"A trial court has a sua sponte duty to instruct on the general principles of law relevant to the issues raised by the evidence. [Citation.]" (*People v. Marks* (1988) 45 Cal.3d 1335, 1345.) By giving CALCRIM No. 1600, the trial court satisfied that duty as to the elements of robbery. The trial court had no sua sponte duty to modify CALCRIM No. 1600 to clarify that fear means actual fear. (*Morehead, supra*, 191 Cal.App.4th at p. 772 ["No Sua Sponte Duty to Instruct on the Subjective/Objective Concept of Fear," italics omitted].)

In *Morehead*, the Court of Appeal concluded a trial court has no sua sponte duty to explain to the jury the subjective/objective concept of fear for the crime of robbery. (*Morehead, supra*, 191 Cal.App.4th at p. 772.) The

_____

[2] CALCRIM No. 1600 given to the jury read, in relevant part: "1. The defendant took property that was not her own; [¶] 2. The property was in the possession of another person; [¶] 3. The property was taken from the other person's possession or his immediate presence; [¶] 4. The property was taken against that person's will; [¶] 5. The defendant used force and fear to take the property or to prevent the person from resisting; [¶] AND [¶] 6. When the defendant used force or fear, she intended to deprive the owner of the property permanently. [¶] The defendant's intent to take the property must have been formed before or during the time she used force or fear. If the defendant did not form this required intent until after using the force or fear, then she did not commit robbery. [¶] . . . [¶] Fear, as used here, means fear of injury to the person himself or herself, or injury to the person's family or property, or immediate injury to someone else present during the incident or to that person's property."

court rejected the defendant's assertion that former CALCRIM No. 1600, by failing to instruct that fear must be reasonable, was defective. (*Morehead,* p. 774.) The court reasoned that the word fear has "no technical meaning peculiar to the law" and therefore "the court did not have a sua sponte duty to amplify the robbery instructions by telling the jury that each victim's fear had to be both actual and reasonable." (*Ibid.*) The court concluded: "Because the court's instruction did not omit or withdraw an element from the jury's determination, [the defendant] was required to request an additional or clarifying instruction if he believed that the instructions the court gave under CALCRIM No. 1600 were incomplete or needed elaboration. [Citation.] It is undisputed he failed to do so, and thus error cannot now be predicated upon the court' failure to give an additional or clarifying instruction." (*Ibid.*)

In *People v. Anderson* (2007) 152 Cal.App.4th 919, 944-945, the defendants challenged former CALCRIM No. 1600 on the ground it did not require proof that the victim was actually afraid. The Court of Appeal concluded that while the fear necessary for robbery is subjective in nature, former CALRIM No. 1600 was not deficient because the terms force and fear have no technical legal meaning. (*Id.* at p. 946.)

Both the *Morehead* court and the *People v. Anderson* court relied on *People v. Anderson* (1966) 64 Cal.2d 633 (*Anderson*). In *Anderson*, the California Supreme Court concluded the trial court did not commit error by failing to instruct the jury sua sponte as to the amount of force or fear necessary to commit robbery. (*Anderson, supra*, 64 Cal.2d at p. 639.) Because the trial court had properly instructed the jury on the general principles of law governing the crime of robbery, the defendants essentially were arguing the instruction needed amplification or explanation with definitions of force

9

and fear. (*Ibid.*) No instructions on the meanings of those words were necessary because they had no technical legal meaning. (*Ibid.*)

The *Morehead* court also relied on *People v. Maury* (2003) 30 Cal.4th 342 (*Maury*). In *Maury*, the defendant, who had been convicted of rape, claimed the trial court had committed reversible error by failing to instruct sua sponte that the victim's fear of immediate and unlawful bodily injury had to be reasonable. (*Id.* at p. 425.) Citing *Anderson, supra*, 64 Cal.2d at page 633, the California Supreme Court concluded the trial court in a forcible rape case had no sua sponte duty to instruct the jury that the victim's fear must be reasonable. (*Maury,* at pp. 425-426.) The trial court had instructed on the essential elements of rape, including the element that the act of sexual intercourse "'was accomplished by means of force, violence, or fear of immediate and unlawful bodily injury.'" Because the instruction did not omit or withdraw an element from the jury's consideration, the defendant was required to request a clarifying instruction if the defendant believed the instruction was incomplete. (*Ibid.*)

Under these authorities, Defendant's challenge to CALCRIM No. 1600 as given in this case has no merit. The trial court instructed the jury on the essential elements of robbery with CALCRIM No. 1600. The instruction was not erroneous and did not omit or withdraw an element from the jury's consideration. The trial court had no sua sponte duty to modify the instruction by clarifying that fear means the victim was actually afraid. Defense counsel did not request a modification to or clarification of the instruction with the 2022 revision on actual fear. As a consequence, "error cannot now be predicated upon the court's failure to give such an . . . instruction." (*Morehead, supra*, 191 Cal.App.4th at p. 774.)

As noted, CALCRIM No. 1600 is the official jury instruction on robbery. The two sentences added by the March 2022 revision are not surrounded by brackets and, therefore, are considered by the Judicial Council of California to be mandatory, not optional. (Judicial Council of California Criminal Jury Instructions, *supra*, Alternatives vs. Options, p. xxii.) Defendant places great emphasis on the lack of brackets as establishing that failure to give the 2022 revision constitutes error. The Judicial Council's comments and guide for using CALCRIM, however, do not have the force of law. (See *People v. McDonald* (2015) 238 Cal.App.4th 16, 25-26.)

## DISPOSITION

The judgment is affirmed.

SANCHEZ, J.

WE CONCUR:

MOORE, ACTING P. J.

GOODING, J.

11